UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTELLE McGECHIE,<br><br>  Plaintiff,<br><br>  v.<br><br>ATOMOS LIMITED and ATOMOS, INC.,<br><br>  Defendants. | No. 2:22-cv-01812-DJC-DB<br><br><br><br>ORDER |

Plaintiff brings the present suit against her former employer alleging discrimination, retaliation, and wrongful termination.  Before the Court are Defendant Atomos Limited's Motions to Dismiss for lack of Personal Jurisdiction and Forum Non Conveniens in which Defendants assert that this Court cannot exercise personal jurisdiction over Defendant, and that Australia is the proper forum for Plaintiff's suit.  Defendant Atomos, Inc. has joined the Motion to Dismiss for Forum Non Conveniens, but has not challenged personal jurisdiction.  For the reasons below, the Court DENIES both motions and will retain jurisdiction over the case.[1]

////

////

---

[1] Defendants have also filed a Motion to Stay pending decision on the Motions to Dismiss.  (Mot. to Stay (ECF No. 34).)  Because the Court has now resolved these motions, the Motion to Stay is DENIED as moot.

1

I. **Background**

A. **Factual Background**

Plaintiff Estelle McGechie brings the present suit alleging that during her employment with Defendants Atomos Limited and Atomos, Inc., she was subject to discrimination based on her gender, and was retaliated against and wrongfully terminated for engaging in whistleblowing activity and reporting discrimination. (First Am. Compl. ("FAC") (ECF No. 23) ¶¶ 1–5.) Defendant Atomos Limited is an Australian based technology company, and Defendant Atomos, Inc., a wholly owned subsidiary of Atomos Limited, is an Oregon based company. (*Id*. ¶¶ 7–8, 11.)

Plaintiff was employed by Defendants from approximately March 2021 through her termination in April 2022. (*Id*. ¶¶ 29, 76, 81–82.) She began as an independent contractor and was then hired as the Chief Product Officer ("CPO") in June 2021. (*Id*. ¶ 29.) In September 2021, Plaintiff became the Chief Executive Officer ("CEO") of Atomos. (*Id*. ¶ 40.) During her employment as an independent contractor and as CPO, Plaintiff worked remotely from her home in Truckee, California. When Plaintiff accepted the position as CEO, she agreed to eventually relocate to Melbourne, Australia, Atomos's headquarters. (*Id*. ¶¶ 82, 7; Mot. to Dismiss for Lack of Personal Jurisdiction ("MTD 1") (ECF No. 6), Ex. A at 20, 29.) However, due to Covid-19 travel restrictions, the Parties agreed that Plaintiff would not begin working from Australia until at least January 2022, and would continue Plaintiff's same employment arrangements allowing her to work in California until her relocation. (MTD 2, Ex. A at 20.) Defendants furnished Plaintiff's home office in California, provided her with a California cost-of-living wage adjustment, paid her in California, and withheld California employment taxes. (FAC ¶ 30.) Plaintiff did not move to Australia during her employment, and was employed by Defendants exclusively in California for her entire tenure. (FAC ¶¶ 6, 14–15, 82.)

Plaintiff alleges that she was recruited by Defendants because of her experience and business connections in the Silicon Valley technology industry. (*Id*.

2

¶¶ 27–29.) The then-CEO of Atomos Limited recruited Plaintiff through both remote and in-person meetings, including by travelling to and staying at Plaintiff's home for a week. (Decl. of Estelle McGechie ("McGechie Decl.") (ECF No. 7-1) ¶¶ 1–2.) While she was CEO, Plaintiff leveraged her experience and connections to create business relationships with California-based companies, and to recruit and hire multiple California-based employees. (*Id.* ¶¶ 8–12; FAC ¶¶ 15–18, 29.) While Plaintiff primarily worked remotely from her home office in Truckee, California, Plaintiff asserts that she regularly worked with California employees based in Defendants' Los Angeles, California office both remotely and in person. (McGechie Decl. ¶ 8.)

Shortly after she began working as CEO, Plaintiff alleges that she was met with resistance and condescension from members of the all-male executive board, and was otherwise subject to less favorable terms of employment than her male predecessor, including lesser pay. (*Id.* ¶¶ 41–51.) Plaintiff alleges that she raised complaints, but the discrimination was not addressed. (*Id.* ¶¶ 50–51.) Plaintiff further alleges that as CEO she became aware of, and raised concerns about, potentially illegal activity Atomos was engaged in, including "channel stuffing" and insider trading. (*Id.* ¶¶ 54–75.) Plaintiff alleges that Atomos terminated her in retaliation for her whistleblowing activity and for reporting discrimination. (*Id.* ¶¶ 76–82.) She brings the present action alleging violations of California law including gender discrimination and retaliation in violation of California Government Code § 12940(a); retaliation in violation of California Labor Code § 1102.5; and wrongful termination in violation of public policy. (*Id.* ¶¶ 87–112.)

**B. Procedural Background**

Plaintiff originally filed this suit in California Superior Court, Nevada County. (Not. of Removal (ECF No. 1).) Defendant Atomos Limited subsequently removed the suit to this court on October 1, 2022. (*Id.*) Shortly after, Defendant Atomos Limited filed the present Motions to Dismiss (MTD 1; Mot. to Dismiss for Forum Non

////

1  Conveniens ("MTD 2") (ECF No. 11)), which Plaintiff has opposed (Opp'n to MTD 1
2  (ECF No. 7); Opp'n to MTD 2 (ECF No. 15)).

3  Upon stipulation of the Parties, Plaintiff filed the First Amended Complaint
4  which (1) added Atomos Inc. as a party, including allegations that Defendants are alter
5  egos of each other, and (2) fixed a formatting error in paragraph 27.  (See Motion to
6  Amend Complaint (ECF No. 16); Stipulation (ECF No. 21); FAC.)  Plaintiff did not
7  otherwise make substantive changes to the Complaint which would alter the
8  arguments presented in the Motions to Dismiss and require refiling.  To the extent that
9  the addition of Defendant Atomos, Inc. effects the Motion to Dismiss for Forum Non
10 Conveniens, the Parties have provided additional briefing.  After being added to this
11 suit, Defendant Atomos, Inc. joined Defendant Atomos Limited's Motion to Dismiss for
12 Forum Non Conveniens.  (ECF No. 25.)  Defendants filed a Reply after the joinder of
13 Defendant Atomos, Inc. (ECF No. 26), and Plaintiff filed a Sur-Reply (ECF No. 33).

14 After this case was reassigned to this Court, Defendants filed a Motion to Stay
15 pending decision on the Motions to Dismiss.  (Mot. to Stay (ECF No. 34).)  The Court
16 on its own motion, and pursuant to Local Rule 230(g), set a hearing for all three
17 pending motions on February 29, 2024.  The Court held the hearing with Michelle Lee
18 appearing for Plaintiff and Hieu Williams appearing for Defendants.  The Court orally
19 denied both Motions to Dismiss (ECF No. 41) with a written order to subsequently
20 issue.

21 **II.     Motion to Dismiss for Lack of Personal Jurisdiction**
22 **A.  Legal Standard**

23 Rule 12(b)(2) allows a party to assert lack of personal jurisdiction as a defense,
24 and request dismissal of the suit.  Fed. R. Civ. P. (12)(b)(2).  "Although the defendant is
25 the moving party on a motion to dismiss [for lack of personal jurisdiction], the plaintiff
26 bears the burden of establishing that jurisdiction exists."  *Rio Props., Inc. v. Rio Int'l*
27 *Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).  "[I]n the absence of an evidentiary
28 hearing, the plaintiff need only make 'a prima facie showing of jurisdictional facts to

4

withstand the motion to dismiss.'" *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) (*quoting Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)). "In evaluating the appropriateness of personal jurisdiction over a nonresident defendant, [courts] ordinarily examine whether such jurisdiction satisfies the 'requirements of the applicable state long-arm statute' and 'comports with federal due process.'" *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 919 (9th Cir. 2011), *rev'd on other grounds sub nom. Daimler AG v. Bauman*, 571 U.S. 117 (2014) (quoting *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404–05 (9th Cir. 1994)).

"The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds by Daimler*, 571 U.S. at 126 (citing *Data Disc, Inc. v. Systems Technology Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977)). When a district court does not hold an evidentiary hearing on the discovery materials and affidavits relied upon, "the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995); *see also AT & T v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir. 1996). Plaintiff's facts are taken as true for the purposes of a 12(b)(2) motion to dismiss, and any "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiffs'] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *AT & T,* 94 F.3d at 588 (citations omitted).

**B.  Discussion**

California's long arm statute allows the exercise of personal jurisdiction to the extent allowed by the U.S. Constitution. Cal. Code Civ. Proc. § 410.10. Accordingly, the Court need only assess whether the exercise of jurisdiction in this case comports with due process.

Courts may have general or specific jurisdiction over an entity depending on the nature and extent of that entity's contact with the forum state. A court may

5

exercise general jurisdiction over a corporation in a state where the corporation is "at home." A corporation is at home in a state where its "affiliations . . . are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 119 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). This is generally where the corporation is incorporated and where it maintains its principal place of business. *Id.* The corporation's "continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 318 (1945). However, courts do have specific jurisdiction over corporations where there is sufficient contact with the forum state, and the claims arise out of that contact. *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017) ("[T]here must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." (quoting *Goodyear*, 564 U.S. at 919)). Plaintiff appears to concede that there is no general jurisdiction over Defendant – which is incorporated and headquartered in Australia – arguing only that this Court has specific jurisdiction over Defendant.

In the Ninth Circuit, specific jurisdiction is determined by a three-prong test: "(1) the defendant must either 'purposefully direct his activities' toward the forum or 'purposefully avail[ ] himself of the privileges of conducting activities in the forum'; (2) 'the claim must be one which arises out of or relates to the defendant's forum-related activities'; and (3) 'the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). "The plaintiff bears the burden of satisfying the first two prongs of the test" while the burden of the third prong shifts to defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

////

### i. Purposeful Direction and Availment

"To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (cleaned up). "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. Likewise, purposeful direction involves intentional contact with the state. It is "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there" which are relevant to the inquiry. *Walden v. Fiore*, 571 U.S. 277, 285 (2014). The defendant's mere knowledge that the plaintiff resides in the forum state "will not, on its own, support the exercise of specific jurisdiction." *Axiom*, 874 F.3d at 1070. However, "individualized targeting may remain relevant to the minimum contacts inquiry," *id.*, as "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff . . . ." *Walden*, 571 U.S. at 286. Only purposeful contacts, and not "random, fortuitous, or attenuated contacts" will give rise to personal jurisdiction. *Id.*

Many courts have found that employing an individual in the forum state, especially where defendant uses the employee to further its own interests in the state, constitutes purposeful availment. *See Franey v. Am. Battery Sols. Inc.*, No. 22-CV-03457-LB, 2022 WL 4280638, at *6 (N.D. Cal. Sept. 15, 2022) (collecting cases); *see, e.g.*, *Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 594 (N.D. Cal. 2022) (finding that defendant had purposefully availed itself of California where it hired plaintiff "to capitalize on Plaintiff's Silicon Valley connections"); *Mercado v. JMJ Assocs. LLC*, No. SACV-14-2060-JLS-RNB, 2015 WL 13783452, at *4 (C.D. Cal. Apr. 15, 2015) (finding personal jurisdiction where the defendant hired the plaintiff to work in California and plaintiff built business relationships with California businesses on defendant's behalf).

Similarly, courts have found purposeful direction where the defendant employs the plaintiff in the forum state, and then acts intentionally to support the plaintiff's employment in the state or commits intentional acts against the plaintiff like harassment, discrimination, retaliation, or termination. *See Franey*, 2022 WL 4280638 at *9 (finding purposeful direction where the defendant "support[ed] the plaintiff's employment in California by providing office supplies, paying travel expenses, and paying for health insurance" and then retracted her promotion and retaliated against her); *Mercado*, 2015 WL 13783452, at *4 (same where employee lived in California throughout his employment, the defendant issued checks in California and withheld payroll taxes, and sent the termination letter to plaintiff in California); *Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp. 3d 981, 1029 (N.D. Cal. 2015) (same where defendant employed individuals in California and applied an unlawful wage policy).

Here, Defendant Atomos Limited[2] purposefully directed its activity at, and availed itself of, California. Defendant did not only recruit and contract with Plaintiff in California, as Defendant asserts, but Defendant employed Plaintiff in her capacity as CEO for nearly 6 months in California. Defendant took proactive steps to support Plaintiff's employment in California, including agreeing to continue the wage arrangements that would allow her to continue working in California, issuing checks in California for work performed in California, and paying California employment taxes. Plaintiff also claims that Defendant supplied her home office and sent product prototypes to her in California.

In addition, Defendant allegedly conducted business in California through Plaintiff. Plaintiff alleges that Defendant recruited her specifically because of her Silicon Valley technology industry connections in California. While she was employed as the CEO of Atomos, and working exclusively in California, Plaintiff supervised and recruited multiple Californian employees, and built business relationships, and

---

[2] As Defendant Atomos, Inc. has not challenged personal jurisdiction, the Court will only review the personal jurisdiction of Defendant Atomos Limited.

8

contracted with California-based companies – all purposeful activities conducted on behalf of Defendant, which were aimed at California companies and residents, and from which Defendant directly benefitted. Plaintiff's conduct while she was CEO is the mechanism by which Defendant availed itself of the privileges and benefits of doing business in California.[3]

Defendant makes much of the fact that the employment agreement expressed an intention for the role to eventually be performed in Australia. Defendant relies on *Selhorst v. Alward Fisheries, LLC*, and *Sarkis v. Lajcak* for the proposition that the contemplated future consequences of an employment contract govern the inquiry. *See* No. C-11-3266 EMC, 2011 WL 4974568, at *6 (N.D. Cal. Oct. 19, 2011) and 425 F. App'x 557, 559 (9th Cir. 2011), respectively. Both cases, however, have a key distinguishing fact: the plaintiff in each case *never performed work in the forum state*. *See Selhorst*, WL 4974568, at *6 ( the contract stated that work would be performed "in Alaska only" and the plaintiff never performed work in the forum state); *Sarkis*, 425 Fed. App'x at 599 ("At no time during his employment did Sarkis perform work in California, nor did his employment contract suggest otherwise.") The only contact the defendants had with the forum state were recruiting the plaintiff and negotiating the contract. Moreover, the Ninth Circuit in *Sarkis* made clear that it is the "actual course of dealing," and not exclusively the terms of a contract, which is determinative. 425 Fed. App'x at 599 (emphasizing that the "actual course of dealing conformed with the terms of the contract" and the plaintiff moved out of the forum state to perform the contract).

---

[3] Moreover, "although physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State–either by the defendant in person or through an agent, goods, mail, or some other means–is certainly a relevant contact." *Walden*, 571 U.S. at 285 (internal citations omitted) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) and *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773-74 (1984)). Not only was Plaintiff physically present in California while she was acting as the CEO, *i.e.*, an agent of Defendant, but Defendant also maintains a physical office located in Los Angeles in which it employs other California residents. Plaintiff alleges that Defendant's officers, including Defendant's former CEO, visited California for a prolonged period to recruit Plaintiff. This further establishes that Defendant purposefully directed activity at and availed itself of California.

9

Despite the employment agreement stating that the job location was intended to be Melbourne, Australia, the Parties explicitly contemplated that Plaintiff would work in California from September 22, 2021 until at least January 1, 2022 due to COVID-19 travel restrictions.  The offer letter preceding the employment agreement states "[i]t is currently planned that you will be in Australia on a permanent basis on or around January 1, 2022" despite the employment term commencing on September 22, 2021.  (*See* MTD 1, Ex. A at 20, 30.)  The offer letter also contemplates that Plaintiff might have continued to be employed in California beyond January 1, 2022, stating that given "current restrictions . . . we will both remain flexible to what is practical" and that the "[c]urrent employment arrangement . . . will continue until January 1, 2022 (unless another date is mutually agreed)." (*Id.* at 20.)  And, in fact, the actual course of dealing between the Parties was that Plaintiff performed work exclusively in California for her entire tenure.  Though Defendant claims that Plaintiff's employment occurred in California because of "Plaintiff's unilateral decision to breach her contract and remain [in California]," this argument is belied by the above-quoted statements in the offer letter, Defendant's proactive conduct to allow her to continue working in California, and the actual course of dealing.  Despite Defendant's framing, Defendant's contacts with California were significantly more purposeful and substantial than those in *Shelhorst* and *Sarkis*.

### ii. Relation of the Claims to the Forum Related Activity

Next, the claims brought by the plaintiff must arise out of or relate to the defendant's contacts to the forum in order for the court to exercise jurisdiction.  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 361–62 (2021).  A "strict causal relationship is not required" to establish relation; instead there must only be a "connection" between the forum related activity and the injury claimed.  *Id.*

Here, there is a sufficient relationship because "[t]he defendants' contacts with California resulted from the employment relationship, and the plaintiff's claims arise out of the relationship*.*"  *Franey v. Am. Battery Sols. Inc.*, No. 22-CV-03457-LB, 2022

WL 4280638, at *10 (N.D. Cal. Sept. 15, 2022).  Plaintiff alleges that it is while she was performing work for Defendant in California that Defendant carried out the acts giving rise to her claims, including engaging in gender discrimination and retaliation, and wrongfully terminating her.  Plaintiff claims that during the course of her employment, Defendant discriminated against her based on her gender, and that she complained about that discrimination.  She also alleges that she reported her belief that Defendant was engaged in unlawful activity, including selling defective products in California, making false representation to investors, and allowing insider trading.  It was in response to these complaints, made in the course of her employment, that she was allegedly retaliated against and wrongfully terminated.

Employing an individual in the forum state provides a sufficient nexus to an adverse employment action claim.  *See, e.g. Mercado*, 2015 WL 13783452, at *4 (finding that the plaintiff's claims of discrimination and wrongful termination arose out of remotely employing the plaintiff in California, and terminating the plaintiff in California); *Franey*, 2022 WL 4280638, at *10 (finding that the alleged sexual harassment and retaliation arose out of defendant's contacts with California where defendant employed plaintiff remotely in California, even though some of the alleged sexual harassment occurred in Michigan); *Alexis v. Rogers*, No. 15CV691-CAB-BLM, 2016 WL 11707630, at *10 (S.D. Cal. Feb. 26, 2016) (finding a sufficient nexus where defendant virtually employed plaintiff in California and sexually harassed her during her employment, despite the fact that some sexual harassment occurred in person in New York, Alabama, and Colorado during business trips).  This case presents an even stronger connection than those listed because Plaintiff's employment occurred exclusively in California, and she suffered all of the alleged discrimination, retaliation, and termination in California.

Defendant attempts to argue that the alleged conduct was carried out by individuals not physically present in California, and so the injury did not arise out of conduct "in" California.  This is a distinction without a difference.  Digital or remote

contacts are sufficient to create personal jurisdiction where, as here, that digital conduct is aimed at and felt within the state. *See D.light Design, Inc. v. Boxin Solar Co.*, No. 13-CV-05988- EMC, 2015 WL 7731781, at *2 (N.D. Cal. Dec. 1, 2015) ("Courts that have interpreted *Walden* in the context of virtual contacts have generally found personal jurisdiction over defendants who conduct interactive online activities with forum residents or direct business to the forum state  . . . .").[4] Discrimination and retaliation, even if done remotely, are purposeful contacts which gives rise to injury in the forum where the contact occurs.

### iii. Fair Play and Substantial Justice

Even if the Plaintiff has established the first two prongs of the test, the court must still determine that the exercise of jurisdiction comports with fair play and substantial justice. The court may consider "(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995). However, it is the defendant's burden to make a "'compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 476–78)).

Despite having this burden, Defendant has explicitly chosen to not present an argument stating, in full, "[b]ecause Plaintiff has not made a *prima facie* showing of jurisdiction by establishing purposeful availment or purposeful direction and relatedness, Atomos does not need to address whether the exercise of jurisdiction

---

[4] In addition, Plaintiff alleges that her termination was due, in part, to her reports that Defendant had engaged in unlawful conduct while doing business in California. (FAC ¶ 103.) This too provides a sufficient nexus between the Defendant's business contacts with California and Plaintiff's retaliation and wrongful termination claims related to whistleblowing.

would be fair."[5] (MTD 1 at 13.) This is far from a "compelling case." Because the Court has determined that Defendant made numerous, purposeful, contacts with California, and is alleged to have violated California employment laws against the Plaintiff who resided in California during her entire employment, the Court finds that it is fair and just to exercise personal jurisdiction over Defendant.

Accordingly, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is DENIED.

### III. Motion to Dismiss for Forum Non Conveniens

Defendant Atomos Limited's Motion to Dismiss for Forum Non Conveniens, which Defendant Atomos, Inc. joins, asserts that Australia is the proper forum for Plaintiff's claims.

#### A. Legal Standard

A motion to dismiss for forum non conveniens is not governed by the rules of civil procedure; rather "[a] district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties." *Lueck v. Sunstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947). In deciding a motion for forum non conveniens, the court must examine: "(1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal."[6] *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981); *Gulf Oil*, 330 U.S. at 507–09; *Ceramic Corp. of America v. Inka Maritime Corp.*, 1 F.3d 947, 949 (9th Cir. 1993); and *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 767 (9th Cir. 1991)). Dismissal for forum non conveniens should only be granted in

---

[5] Defendant also failed to present any argument on fairness in its reply brief. (*See* Reply to MTD 1 (ECF No. 10).)

[6] The Ninth Circuit also requires the court to make a choice of law determination where the case involves law which "mandat[e] venue in the United States district courts." *Id.* at 1148 (quoting *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 700 (9th Cir. 1995)). Otherwise, the choice of law determination carries little weight and is unnecessary. *See id.* Here, there is no potentially forum-determinative law, so the court does not need to make a choice of law determination at this juncture.

"exceptional circumstances."  *Ravelo Monegro v. Rosa*, 211 F.3d 509, 512 (9th Cir. 2000).

### B.  Discussion

The Court finds that the first factor is met as Australia would provide an adequate alternative forum.  "[A] foreign forum will be deemed adequate unless it offers no practical remedy for the plaintiff's complained of wrong" and the defendant is amenable to service of process in that forum.  *Lueck*, 236 F.3d at 1143–44.  Australia is a common law jurisdiction which has a robust legal system.  Plaintiff does not contest that Australia provides sufficiently similar employment protections and remedies as California, and instead objects to the adequacy of the forum because she would be required to split her claims and pursue intermediary dispute resolution procedures.  (*See* Decl. of Bruce James Heddle ("Heddle Decl.") (ECF No. 11-1) at 3; Opp'n to MTD 2 at 8.)  That a forum is more inconvenient does not, however, make it inadequate.

However, despite Australia providing an adequate forum, the balance of factors, discussed below, do not weigh in favor of dismissal.  Where, as here, the plaintiff is a domestic plaintiff[7] suing a foreign defendant, there is a "strong presumption in favor of [the] domestic plaintiff's forum choice."  *Ravelo*, 211 F.3d at 513.  In these cases, dismissal is generally only appropriate where the plaintiff "chooses a forum with little or no relation to either the defendant or the action."  *Id.* at 512. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *Gulf Oil*, 330 U.S. at 508.  Defendant has not shown that the public and private factors outweigh Plaintiff's convenience of suing in her own forum for conduct that occurred entirely within that forum.

The private factors the court should consider are "(1) the residence of the

---

[7] Although Defendant alleges that Plaintiff is an Australian citizen, Plaintiff asserts that she is also a U.S. Citizen, was at all relevant times a resident of California, and continues to reside in California.  (FAC ¶ 6.)

14

parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) 'all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Lueck*, 236 F. 3d at 1145.  The public interest factors are "(1) local interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to th[e] forum." *Id.* at 1147.

Defendants assert that the following facts weigh in favor of the alternate forum: (1) the majority of the pertinent witnesses reside in Australia; (2) California is extremely inconvenient for Defendants; (3) all relevant documents are located in Australia; (4) compelling witnesses will be difficult and time consuming; (5) bringing witnesses to trial will be difficult; (6) a judgement may not be enforceable in Australia; (7)  Australia has the greatest interest in rectifying any of the employment or securities issues raised by Plaintiff; (8) the Court and the jury will be unfamiliar with Australian law; and (9) resolving the claims will be costly and burdensome to the Court.  (MTD 2 at 6–15.)

The location of Defendant Atomos Limited and many of the relevant witnesses, and the burden and cost of travel from Australia to California, weigh most heavily in favor of the Defendants.  The Court acknowledges the significant time burden and monetary expense Defendants will incur to travel and bring witnesses for trial.  However, the Court also recognizes that Defendant Atomos, Inc. is based in Oregon, and that Defendant Atomos Limited conducts regular business in California, maintains an office in Los Angeles, California, and has sent officers to California for business matters in the past (including to recruit Plaintiff).  Further, as a technology company, Atomos Limited likely possesses adequate technological capability to conduct most of the litigation remotely, including discovery, depositions, and court hearings.  Defendant has secured local counsel who is capable of attending in-person court hearings, and though the Court generally prefers in-person hearings, it is willing to

conduct hearings remotely when necessary for the convenience of Defendants. Further, if these claims were tried in Australia, the burden and expense of travel would merely be shifted to Plaintiff who is a current California resident, and Plaintiff's witnesses who reside in the United States. Plaintiff, as an individual, likely has fewer resources than Defendants, and so the burden will be even greater to Plaintiff if her claims are brought in Australia. *Cf. Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (denying a motion to transfer where transfer would "merely shift rather than eliminate the inconvenience").

Defendants maintain that a judgement would be unenforceable under the Australian Corporations Act. (*See* Heddle Decl. at 4.) Under the Corporations Act, any "benefit" given to an employee in connection with their termination must be approved by a corporation's shareholders; however, this requirement does not apply to court ordered judgements. (*Id.*) Defendant's expert has stated that it is unclear whether the term "court" includes courts of foreign jurisdiction or only Australian courts, and that there exists no decision addressing that question. (*Id.*) Plaintiff has provided the declaration of a rebuttal expert who argues that the term "court" in the relevant section means any court, including courts of foreign jurisdiction, in contrast to the terms "Court" and "court of summary jurisdiction" which elsewhere in the act are expressly defined as Australian courts only. (*See* Decl. of Mark Sehler (ECF No. 15-2) at 3.) This Court cannot dismiss Plaintiff's claims based on Defendants' expert's speculation that "court" may not include courts of foreign jurisdiction, especially in the face of a compelling alternate interpretation. Further, as Plaintiff noted in her opposition, Plaintiff claims that Defendant Atomos, Inc., a U.S. corporation, is the alter ego of Defendant Atomos Limited, and that a judgement against Atomos, Inc. in the United States will be enforceable regardless of Australian law. (*See* Opp'n to MTD 2 at 16, n.6.)

The other factors cited by Defendants are not compelling. First, though Defendants maintain that all of the relevant documents are located in Australia,

Plaintiff's employment was carried out remotely, and electronic documents will primarily be at issue. Defendant has not provided examples of potentially relevant non-electronic, physical evidence, stating only that its files and servers are located in Australia. (MTD 2 at 8.) To the extent that physical evidence is relevant, it will likely be very minimal. Second, though Defendants make much of the Court's unfamiliarity with Australian securities law, Plaintiff's claims all arise under California employment law, and Australian law is only relevant insofar as Plaintiff must establish that she sincerely believed that the law had been violated. (*See* Cal. Lab. Code § 1102.5.) Neither the Court, nor the jury, will need to determine that the law was in fact violated, or resolve any other substantive issue of Australian law. Finally, it is clear that California has the strongest interest in resolving Plaintiff's employment claims, and upholding California employment law, considering that Plaintiff was employed exclusively in California and never employed in Australia. *See* Cal. Lab. Code § 925 (evidencing a strong interest in applying California labor law to employment occurring primarily in California).

At bottom, Defendants have not made a great enough showing of inconvenience to offset Plaintiff's forum choice. The Court accordingly DENIES the Motion to Dismiss for Forum Non Conveniens.

**IV.  Conclusion**

For the above reasons, IT IS HEREBY ORDERED that Defendants' Motions to Dismiss, ECF Nos. 6 and 11, are DENIED. Additionally, Defendants' Motion to Stay, ECF No. 34, is DENIED as moot.

IT IS SO ORDERED.

Dated:  **March 11, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC2 – McGechie22cv01812

17